The prisoner was indicted in the Superior Court of Buckingham, for the murder of Francis Gibson. The Indictment was in the usual form, except in one particular. It charged that the prisoner, “feloniously, wil-fully, and of his malice aforethought,” did make an assault on the deceased ; the same terms are used in describing the stab, stick and thrust; but it concludes thus, “ And so the jurors aforesaid, upon their oath aforesaid, do say, that the said Levi Gibson, him the said Francis Gibson, in manner and form aforesaid, feloniously, wilfully, and maliciously did kill and murder against the peace and dignity of the Commonwealth of Virginia substituting the word maliciously, for the words “ of his malice aforethought.”
The prisoner was convicted of murder in the second degree, and five years fixed on as the term of his imprisonment. When brought up to receive his sentence, he moved -the Court “ to set aside the pretended verdict alleged to be rendered against him, because the said pretended verdict is not the verdict of the jury sworn to try the prisoner, one of the jurors being absent from the rest, and out of the presence of the Court at the time the said pretended verdict was received in the Court, and at the time the jurors were discharged by the Court, which was not known *to the said prisoner, or his Counsel, at the time of the rendition and reception of the said pretended verdict. He also moved the Court to set aside the verdict, [this ought to have been a motion to arrest the judgment,] for that he ought not by the Haws of the land to be convicted of murder on the said Indictment, the same being by Haw insufficient to charge him with the said crime.” In support of his first proposition, he introduced Charles Woodson, one of the jurors, who being sworn, said'that he came into Court with the rest of the jurors, after having agreed to a verdict against the prisoner, which was subscribed by Oglesby Scruggs, and that he remained in Court until the jurors’ names were all called over, and severally answered to, and the Clerk asking if the jury had agreed, it was answered they had, and the jury directed to look upon the prisoner, and being asked if the prisoner was guilty or not, it was answered guilty, and the verdict delivered to the Clerk, and the same that had been agreed to in the jury-room, read aloud in open Court; that being sick, and at this moment likely to faint, he requested one of the deputy sheriffs who was standing near him, in the rear of the jury, to attend him, and stepped into the jury-room, where he laid down, and there remained until the jury were discharged; that he was not present in Court at the discharge. Nor was he present when any alteration in the phraseology of the verdict was made in Court, nor at any time after he had answered to his name, and heard the verdict which had been by the jury agreed on, in their room, read by the Clerk as already stated, and that he does not recollect to have had any communication with any one on the subject which had been before the jury, while thus retired. He also introduced the testimony of Robert S. Gary, the deputy sheriff who attended the said Charles Woodson, as above stated, and stood by his side most of *141 the time, and in the jury-room door the rest of the time ; and although several persons were in the room, the juror had no conversation with any respecting the subject which had been before the jury : that he was near the juror while he stood in the door aforesaid, but as he lay on the bed in the room, he could not at every moment see him ; that he was ignorant of his duty to inform the Court that the juror had withdrawn. And the evidence introduced by the prosecution satisfied the Court, that after the jury came into Court with their verdict written on the Indictment, and ^'subscribed by one of their body, they were called over and answered severally to their names, declaring that they had agreed in a verdict, and being told to look on the prisoner, they said he was guilty ; the verdict was then delivered to the Clerk, and by him read aloud in open Court: the jury were not then immediately discharged by order of Court, but some alteration in the terms of the verdict being suggested by the prosecutor, so as to make it read “ Public Jail and Penitentiary-house,” instead of “ Penitentiary,” the Clerk was ordered to make it in the presence of the Court and jury : at this time it was not known that one of the jury had withdrawn : the Clerk, to effect the alteration, wrote a verdict at large on the same Indictment, in-these words: “We of the jury find the prisoner guilty of murder in the second degree, and ascertain the term of his confinement in the Public Jail and Penitentiary-house to be five years,” which was subscribed by William Watson, another of the jurors, and read aloud in open Court, assented to by the jurors present, and the whole being supposed to be present, were then discharged : the Clerk run his pen across the verdict delivered in by the jury in the first instance, without being directed so to do, that he might know which to regard in making up the record, and that the verdict which was at first delivered into Court, and read as above stated, being the verdict agreed by the whole jury, is in these words : “ We of the jury being impanelled for the purpose of trying Levi Gibson, for the murder of his brother, Francis Gibson, are of opinion that the said Levi Gibson is guilty of murder in the second degree, and that he the said Levi Gibson be confined in the Penitentiary for the term of five years.” Signed Oglesby Scruggs.
On this statement and evidence, the Superior Court adjourned to this Court the following questions:
1. Can this Court disregard the verdict which was written in Court as above stated, an d refer to the verdict which was first delivered by the jury into Court, as above stated, as an existing verdict of the jury in the terms in which it is written ? If so, 2. Is this verdict sufficient to authorise this Court to give judgment against the prisoner, that he be confined in the “Public Jail and Penitentiary-house?” 3. Is the Indictment sufficient in Law to charge the prison er with the crime of murder ? And 4. What farther proceedings ought to be had against the prisoner ? *Notes of argument by Counsel for the prisoner were laid before the Court. He argued, that the Indictment was insufficient to charge the crime of murder, because it does not allege that the prisoner, “ of his malice aforethought,” murdered the deceased. (a) Terms used by the Law expressive of high criminality, and of the very gist of the crime, should be retained in Indictments. It is for the safety of the accused, that the jury should see the enormity of the offence charged, as this may induce them to be cautious in requiring evidence to support the Indictment.
The verdict which was recorded was rendered by eleven jurors, and was therefore not good: the twelfth being absent, never assented to it. Nor can the verdict first presented to the Court be received to found a judgment upon, because eleven of the jurors retracted from it, and this they had a right to do before the verdict is recorded, but not after. 2 Hale’s H. P. C. p. 299. He further contended, that if the verdicts be insufficient, or the Indictment insufficient to charge him with murder, there ought to be no further proceedings against him, and quoted Rex v. Huggins, 2 Str. 882.
The following is the judgment of the Court:
“ This Court is of opinion, and doth decide, that the verdict which was written in Court is a nullity, because it was only agreed to by eleven jurors, the twelfth juror having retired from the Court before it was written and received, and that, therefore, the Superior Court ought to disregard the said verdict; and the Court is further of opinion, that, in a Case of Felony, (b) after the verdict is rendered by the jury, and read in open Court, it is the duty of the Clerk to direct the jury to hearken to their verdict as the Court has recorded it, and then to repeat the verdict to them, and either to poll them, or to say to them, ‘ And so say you All,’ or words to that effect, in which latter case, if none of the jury express their dissent, the verdict ought to stand as recorded, and that until the assent of the jury is expressed in one of these ways, the jury has a right to retract; and until after the assent of the jury is expressed as aforesaid, the verdict is not perfected : that the first verdict ^rendered in this Case, was imperfect in these particulars, and therefore no judgment can be rendered on it.
The Court is further of opinion, that in Indictments for murder, it is necessary to aver that the person indicted, ‘ of his malice aforethought ’ killed and murdered the deceased ; that these words ‘ malice aforethought,’ cannot be supplied by others whose import may be the same : that although it is averred in this Case, that he did ‘ feloniously, wilfully, and of his malice aforethought,’ give the mortal wound, and although in the conclusion the Indictment does aver, that he, ‘ in manner and form aforesaid, feloniously, wilfully, and maliciously did kill and murder,’ *142 &c. ; yet as the words ‘ of malice aforethought,’ are not used in that conclusion, the Indictment in this Case cannot be supported as an Indictment for murder. This Court, however, declines deciding whether the Indictment would be good after verdict, by virtue of the Statute of Jeofails, passed in 1804, having already decided in this Case, that the verdict cannot stand. This Court is further of opinion, that the verdict being imperfect, it ought to be set aside, and a venire facias de novo awarded, and a new trial had of the prisoner, either on this Indictment, as an Indictment for manslaughter, or on a new Indictment for murderwhich is ordered to be certified, &c.

 1 Hale’s H. P. C. 450.

 See Chltty’s Cr. Law, 1st vol. p. 635-6.